ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| CARLOS O. CORDERO JIMÉNEZ,<br><br>Recurrida,<br><br>v.<br><br>ÁNGEL MITCHEL DÍAZ *alias* GUELÍN/MILLY MITCHEL,<br><br>Recurrente. | KLRA202400636 | REVISIÓN procedente del Departamento de Asuntos del Consumidor.<br><br>Querella núm.: CAG-2023-0004004.<br><br>Sobre: contrato de obras y servicios. |

Panel integrado por su presidenta, la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

Romero García, jueza ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 18 de diciembre de 2024.

Comparece el señor Ángel Mitchel Díaz (señor Mitchel Díaz) y nos solicita que revisemos y revoquemos la *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACo) el 18 de septiembre de 2024. Mediante la referida determinación, el DACo declaró con lugar la querella incoada en su contra por el señor Carlos O. Cordero Jiménez (señor Cordero). A su vez, el foro administrativo le ordenó que pagara a la parte recurrida la suma de $4,000.00 por concepto de indemnización.

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

I

El 6 de marzo de 2023, el señor Cordero presentó una querella ante el DACo. En ella, alegó que, allá para el 2019, había contratado con el señor Mitchel Díaz para que este último realizara unos trabajos relacionados a la reparación de una piscina[1]. A su vez, señaló que los trabajos para los que fue contratado el señor Mitchel Díaz adolecieron de graves defectos de construcción; entre ellos, que la piscina no estaba nivelada, se filtraba agua por la tubería, las losas que instaló en el baño

---

[1] *Véase*, apéndice del recurso, a las págs. 1-7.

Número Identificador

SEN2024 _____

estaban huecas y los bloques separados de la pared. Resaltó que por los trabajos realizados ya le había pagado al señor Mitchel Díaz más de $10,000.00. En atención a lo anterior, solicitó al DACo que ordenara al señor Mitchel Díaz a rectificar el trabajo o, en la alternativa, que le impusiera un pago en concepto de reembolso por $4,000.00.

Por su parte, el 4 de diciembre de 2023, el señor Mitchel Díaz presentó su contestación a la querella[2]. En síntesis, negó la existencia del aludido contrato y propuso que la relación contractual que surgió entre las partes fue una de obrero no diestro y patrono, a razón de $150.00 diarios.

Tras varias incidencias procesales, el DACo refirió la querella presentada por el señor Cordero a investigación. El 11 de octubre de 2023, el señor Edgar Amador Acevedo, investigador de querellas de construcción del DACo, rindió su informe de inspección.

En lo pertinente, según surge del informe archivado en autos el 31 de octubre de 2023, la piscina presentaba un cierto desnivel, que podía afectar su funcionalidad y provocar que el agua no circulara adecuadamente[3]. Además, señaló que los defectos e irregularidades a los que se refería la querella requerían de un peritaje adicional[4]. De igual forma, adelantó que las partes del título habían llegado a un acuerdo, mediante el cual el señor Mitchel Díaz realizaría las reparaciones correspondientes, sin costo adicional para el señor Cordero. Finalmente, el inspector concluyó que el costo de la evaluación, certificación y corrección de la tubería era de $875.43, y que las partes contratarían un técnico de piscina para la certificación de la tubería, sin costo adicional para el señor Cordero.

De conformidad con las recomendaciones del inspector, el señor Mitchel Díaz contrató a un técnico de piscina del negocio *Gammar Pool and*

---

[2] *Véase*, apéndice del recurso, a las págs. 8-11.

[3] *Íd.*, a las págs. 12-17.

[4] El inspector del DACo **nada informó sobre las deficiencias en el baño**.

*Spa*. Este certificó que, al 2 de noviembre de 2023, las líneas del *skimmer*, el *main drain* y el retorno estaban en buen estado[5].

No obstante, el 27 de noviembre de 2023, el señor Cordero presentó un nuevo escrito ante el DACo mediante el cual impugnó la certificación emitida por el técnico de piscina[6]. Entre sus objeciones, resaltó que el técnico había dejado fuera de su informe varias de las imperfecciones presuntamente ocasionadas por el señor Mitchel Díaz; entre ellas, las losas huecas y sueltas en el baño, filtraciones en la pared del baño y el desagüe mal instalado. Informó que había intentado comunicarse con el señor Mitchel Díaz, sin éxito.

El 6 de junio de 2024, se celebró la vista administrativa a la que comparecieron las partes del título. El señor Cordero compareció por derecho propio; el señor Mitchel Díaz, por conducto de su representante legal. Sometido el asunto, el DACo emitió su resolución final el 16 de septiembre de 2024, notificada a las partes el 18 de septiembre de 2024[7]. Con el beneficio de las sendas posturas de las partes, los anejos adjuntados al expediente y la evidencia admitida en la vista administrativa, el foro administrativo realizó varias determinaciones de hechos. En lo pertinente, dispuso:

.     .     .     .     .     .     .     .

La piscina tiene más de sesenta (60) años de construida.

**El querellado le indicó al querellante que había trabajado con piscinas y como contratista previamente.**

**Las partes acordaron verbalmente que el querellante pagaría a razón de $150.00 dólares diarios para que el querellado envarillara la piscina, instalara la tubería de la piscina, instalara un velo e hiciera (envarillara) la acera alrededor de la piscina. Además, contrató para la construcción de un pequeño baño.**

Las partes acordaron, además, que **el querellante supliría los materiales y que la obra comenzaría para verano 2019. No se estipuló fecha de culminación de los trabajos.**

---

[5] *Véase*, apéndice del recurso, a la pág. 18.

[6] *Íd.*, a las págs. 19-24.

[7] *Íd.*, a las págs. 25-32.

Luego de que el querellado colocara/instalara la varilla, **el querellante contrató a un tercero para que depositara el cemento de la piscina,** y a petición de éste, el querellado estaría presente durante dicha "tirada" para que observara el proceso.

.        .        .        .        .        .        .        .        .

**El querellado realizó varios trabajos para los que fue contratado, pero los mismos resultaron con defectos además que dejó otros inconclusos.**

**El 6 de marzo de 2023 el querellante radica la querella de epígrafe en la que solicita que el querellado repare las correcciones pactadas (desnivel en la piscina, filtración en tuberías, losas huecas en baño) o rembolse la suma de $4,000 para reparar los defectos.**

Surge del expediente administrativo, específicamente del Informe de Inspección, suscrito por el Sr, Edgardo Amador Acevedo, Investigador de Querellas de Construcción del Departamento, inspección realizada el 11 de octubre de 2023, lo siguiente, en síntesis: "Presenta cierto desnivel que puede afectar la funcionalidad y hacer que el agua no circule adecuadamente**. Para corregir una piscina desnivelada debe vaciar y usar una herramienta de nivelación para nivelar la base de la piscina. Los defectos y las irregularidades se podrán corroborar con la prueba de presión, de existir alguna fuga..."**

.        .        .        .        .        .        .        .        .

Para el 2 de noviembre de 2023 el Sr. Francisco Garay, representante de Gammar Pool and Spa, contratado por la parte querellada, visita la residencia del querellante para hacer prueba de presión y emite un documento donde indica que todas las líneas mantuvieron presión y que la línea de skimmer, main drain y retorno estaban en buen estado y no tenían problemas.

.        .        .        .        .        .        .        .        .

**La parte querellante objetó el informe de inspección toda vez que no se incluyó en el mismo los defectos encontrados con las losas huecas del baño, losas sueltas en la pared del fondo, filtración en dicha pared, cambio de llaves, desnivel y filtración de agua en la piscina**.

El 27 de noviembre de 2023 se recibió en este Departamento un escrito impugnando la certificación de Gammar Pool and Spa. No se acompañó documento u otra certificación que impugnara dicha certificación.

**El querellante le reclamó en varias ocasiones al querellado para que visitara/pasara por la residencia, para corregir los defectos, este fue en tres (3) ocasiones para tratar de reparar los defectos de la piscina y de la construcción en general.**

.        .        .        .        .        .        .        .        .

Declaró además el querellante que no tiene certificación de que la piscina no sufrió o sufrió daños a raíz de los terremotos en 2020.

La parte querellada, Ángel Mitchel Díaz, no consta registrada en el Registro de Contratistas del Departamento según requerido por la Ley Núm. 146 de 10 de agosto de 1995 y del Reglamento emitido a su amparo.

(Énfasis nuestro).

Finalmente, en atención a los hechos y las conclusiones de derecho esbozadas, la agencia declaró con lugar la querella presentada por el señor Cordero y ordenó al señor Mitchel Díaz que indemnizara al primero en la cantidad de $4,000.00. En cuanto a la suma impuesta, el foro administrativo sostuvo que cumplía con los propósitos reparadores conferidos por la *Ley Orgánica del Departamento de Asuntos del Consumidor*, Ley Núm. 5 de 23 de abril de 1973, según enmendada, 3 LPRA sec. 341, *et seq.*

Inconforme con la referida determinación, el 4 de octubre de 2024, el señor Mitchel Díaz presentó una solicitud de reconsideración[8]. En esencia, sostuvo que no procedía el pago de $4,000.00, pues la agencia no había fundamentado su determinación en la evidencia que surgía del expediente.

El 15 de octubre de 2024, el DACo declaró sin lugar la referida solicitud de reconsideración[9].

Aún inconforme, el 13 de noviembre de 2024, el señor Mitchel Díaz presentó este recurso y formuló los siguientes señalamientos de error:

Incidió el Departamento de Asuntos del Consumidor al dictar resolución en contra de la parte recurrente que no esta sostenido con evidencia sustancial.

Erró el Departamento de Asuntos del Consumidor al condenar a la parte recurrente al pago de una suma de $4,000.00 dólares sin que desfilara prueba que justificara dicho pago.

(Énfasis omitido.)

Por su parte, el 11 de diciembre de 2024, el señor Cordero compareció por derecho propio y presentó su escrito en oposición.

Con el beneficio de la comparecencia de las partes litigantes, resolvemos.

---

[8] *Véase*, apéndice del recurso, a las págs. 33-40.

[9] *Íd.*, a las págs. 41-43.

II

Es norma reiterada en nuestro ordenamiento jurídico que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. *Super Asphalt v. AFI y otro*, 206 DPR 803, 919 (2021). Ahora bien, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013). Debido a que toda sentencia o determinación administrativa está protegida por una presunción de corrección y validez, la parte que acude a este Tribunal de Apelaciones tiene el deber de colocar a este foro en posición de conceder el remedio solicitado. *Morán v. Martí,* 165 DPR 356, 366 (2005).

A su vez, el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo; y, (3) si las conclusiones de derecho fueron correctas. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

Así pues, como norma general, las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006). Por ello, la revisión judicial ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004).

De otra parte, las conclusiones de derecho de las agencias administrativas serán revisables en toda su extensión. *Torres Santiago v. Depto. Justicia*, 181 DPR 969,1003 (2011); *Asoc. Fcias. v. Caribe Specialty*

*et al. II*, 179 DPR, a la pág. 941. Sin embargo, esto no significa que los tribunales podemos descartar libremente las conclusiones e interpretaciones de la agencia. *Otero v. Toyota*, 163 DPR 716, 729 (2005).

En fin, como ha consignado el Tribunal Supremo de Puerto Rico, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otro*, 206 DPR, a la pág. 819, que cita a *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

B

La Ley Núm. 5 de 23 de abril de 1973, según enmendada, conocida como la *Ley Orgánica del Departamento de Asuntos del Consumidor*, 3 LPRA sec. 341, *et seq.* (Ley Núm. 5), define los poderes y las responsabilidades de dicha agencia. En particular, el Art. 3 de la Ley Núm. 5, 3 LPRA sec. 341b, dispone que el DACo tiene como propósito primordial vindicar e implementar los derechos del consumidor. Véase, además, *Rodríguez v. Guacoso Auto*, 166 DPR 433, 438 (2005).

El inciso (c) del Art. 6 de la Ley Núm. 5, 3 LPRA sec. 341e(c), le confiere al secretario del DACo, entre otros, el poder y la facultad de:

> Atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía.

De igual forma, el inciso (d) del Art. Art. 6 de la Ley Núm. 5, 3 LPRA sec. 341e(d), indica que el secretario del DACo tiene la facultad de:

> [p]oner en vigor, [implantar] y vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las

querellas que se lleven ante su consideración y conceder los remedios pertinentes conforme a derecho.

A su vez, en el ejercicio de los poderes delegados, el DACo también puede conceder indemnización por daños y perjuicios, y fijar las correspondientes cuantías. *Quiñones v. San Rafael Estates, S.E.*, 143 DPR 756, 759 (1997). Ello, para adelantar los intereses de su ley habilitadora, que persigue proteger a los consumidores de prácticas indeseables, y proveer remedios rápidos, efectivos y sencillos. *Íd.*, a la pág. 773.

III

La contienda principal de la parte recurrente se reduce a señalar que el DACo incidió al declarar con lugar la querella de la parte recurrida y, en consecuencia, condenarle al pago de $4,000.00.

Arguye que la determinación de la agencia no está fundamentada en evidencia sustancial. En particular, sostiene que no se desfiló prueba que justificara el pago de los $4,000.00. De hecho, aduce que de la propia resolución final surge que la prueba que intentó presentar el señor Cordero no pudo ser admitida en evidencia[10] y que del informe presentado por el inspector del DACo solo surgía que la corrección de los defectos observados ascendía a $875.00.

De otra parte, en su escrito de oposición, el señor Cordero insistió en que le había pagado al recurrente un **exceso** de $10,000.00, para hacer los arreglos en la piscina y construir el baño, y que el trabajo realizado había resultado gravemente defectuoso. Reiteró que, al momento de contratar con el señor Mitchel Díaz, este le representó contar con el conocimiento suficiente para realizar el tipo de trabajo solicitado. Finalmente, sostuvo que incluso la suma otorgada por el DACo no cubría los daños aludidos en su querella.

---

[10] Se refirió a la resolución en la que la agencia expresó que los estimados presentados por la parte recurrida sobre el costo de los arreglos a la piscina no estaban firmados ni contenían el número de licencia de quien los había emitido, por lo que no podían ser admitidos. *Véase*, apéndice del recurso a la pág. 29.

Evaluada la totalidad del expediente y la normativa aplicable al caso ante nos, concluimos que la agencia administrativa no erró en su determinación. Veamos.

En esta ocasión, no hay controversia respecto a que entre las partes del titulo se perfeccionó un contrato oral mediante el cual el señor Mitchel Díaz se obligó a realizar unas obras de construcción en la piscina y un baño exterior en la propiedad del señor Cordero; ello, a razón de $150.00 diarios y en el entendido de que el señor Cordero asumiría, además, el costo de los materiales de la obra. De igual forma, y contrario a lo planteado por la parte recurrente, el informe del inspector del DACo expresó que había podido observar el desnivel de la piscina, según alegado por el señor Cordero, e informó los trabajos requeridos para solucionar ese desnivel. Ese mismo informe solo fue objetado por el recurrido, pues el inspector había omitido de su informe los desperfectos relacionados al baño.

Si bien los estimados presentados por el señor Cordero no fueron admitidos en evidencia, ciertamente surge del testimonio que le mereció credibilidad a la jueza administrativa que la obra realizada por el señor Mitchel Díaz fue defectuosa. Aunque el señor Mitchel Díaz, quien no contaba con la licencia de contratista ni con los permisos para realizar el trabajo contratado, intentó corregir los desperfectos, no lo logró.

La ausencia de una transcripción, regrabación o exposición narrativa de la prueba de la vista administrativa celebrada en el caso nos permite tomar como ciertas todas las determinaciones de hechos del DACo, relacionadas al testimonio del señor Cordero. En este caso, concluimos que estas resultan suficientes para establecer los daños sufridos por la parte recurrida.

Además, como consignamos antes, el inciso (c) del Art. 6 de la Ley Núm. 5, 3 LPRA sec. 341e(c), le confiere al secretario del DACO, entre otros, el poder y la facultad de atender, investigar y resolver las querellas presentadas por los consumidores sobre bienes y servicios adquiridos o recibidos del sector privado de la economía. De igual forma, aclaramos que,

conforme al ejercicio de los poderes que le han sido delegados, el DACo **tiene la facultad de conceder indemnización por daños y perjuicios**, y para fijar las correspondientes cuantías. Ello, con el loable fin de, entre otros asuntos, proteger a los consumidores de prácticas indeseables, y proveer remedios rápidos, efectivos y sencillos.

Reiteramos que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. Cónsono con ello, nos queda claro del lenguaje utilizado por la jueza administrativa que la determinación del DACo descansó en la credibilidad que le mereció el testimonio del señor Cordero, en cuanto a los desperfectos que aún quedan en la piscina y el baño, luego de la intervención de la parte recurrente.

De otra parte, reconocemos que la suma impuesta es el resultado del ejercicio razonable de la facultad para conceder indemnización por daños con la que cuenta el DACo. En ese sentido, el remedio concedido por la agencia fue apropiado, por lo que su determinación no requiere nuestra intervención.

IV

Por los fundamentos expuestos, confirmamos la *Resolución* recurrida, según emitida por el Departamento de Asuntos del Consumidor el 16 de septiembre de 2024, notificada el 18 de septiembre de 2024.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones